UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

| | |
|---|---|
| ANDRE RYAN PASSENHEIM, | Case No. 15-CV-0422 (PJS/SER) |
| Plaintiff, | |
| v. | ORDER |
| OFFICER ANDREW TOLBERT, individually, and in his official capacity; OFFICER JASON BUCK, individually, and in his official capacity; SGT. MAX FARRAND, individually, and in his official capacity; CRAIG ENEVOLDSEN, Chief of Police, individually, and in his official capacity; and CITY OF BROOKLYN PARK, | |
| Defendants. | |

---

Kenneth U. Udoibok, for plaintiff.

Nathan C. Midolo and Jason M. Hiveley, IVERSON REUVERS CONDON, for defendants.

In this action, plaintiff Andre Passenheim asserts constitutional claims under 42 U.S.C. § 1983 and tort claims under Minnesota law in connection with a traffic stop and search that occurred during the early morning hours of November 4, 2014. Defendants include Officer Andrew Tolbert (who stopped and searched Passenheim), Officer Jason Buck (who arrived on the scene and also searched Passenheim), Sergeant

Max Farrand (who supervised the scene), and the City of Brooklyn Park (which employed Tolbert, Buck, and Farrand).[1]

This matter is before the Court on defendants' motion for summary judgment. The Court will assume familiarity with the facts. For the reasons given on the record at the hearing on defendants' motion and explained below, the Court denies in large part and grants in small part defendants' summary-judgment motion.

## I. STANDARD OF REVIEW

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute over a fact is "material" only if its resolution might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute over a fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

---

[1] The complaint also includes negligence claims against Brooklyn Park and Chief of Police Craig Enevoldsen, ECF No. 1 ¶¶ 32-36, but Passenheim has voluntarily waived those claims, ECF No. 24 at 39.

II.  ANALYSIS

*A.  Federal Claims*

Qualified immunity protects a government official from personal liability "in a § 1983 action unless the official's conduct violate[d] a clearly established constitutional or statutory right." *Winslow v. Smith*, 696 F.3d 716, 730 (8th Cir. 2012) (quoting *Brown v. City of Golden Valley*, 574 F.3d 491, 495 (8th Cir. 2009)).  "The party asserting immunity always has the burden to establish the relevant predicate facts, and at the summary judgment stage, the nonmoving party is given the benefit of all reasonable inferences." *Id.* (quoting *White v. McKinley*, 519 F.3d 806, 813 (8th Cir. 2008)).

The constitutional rights that are at issue in this case—essentially, the right not to be stopped by police without reasonable suspicion and the right not to be subject to excessive force—are clearly established.  Defendants nevertheless argue that there is no clearly established constitutional right to be free from police officers "conducting an over-the-clothes frisk and using a bladed hand technique to feel for possible foreign objects."  ECF No. 17 at 28.  But this framing of the alleged constitutional violation is premised on *defendants'* version of the facts.  Under *Passenheim's* version of the facts—which the Court must accept as true—defendants' conduct went far beyond "conducting an over-the-clothes frisk and using a bladed hand technique to feel for possible foreign objects."  Passenheim testified that, after police apparently suspected

that he was hiding drugs in or near his anus, he was subject to multiple searches that involved "[p]ronging and grabbing and tugging" at his anus with such force that it caused him physical injury. ECF No. 22-4 [Passenheim Dep.] at 108:4-10. If the officers acted with the level of force claimed by Passenheim, they may have violated his clearly established right to be free from excessive force.

Given that the constitutional rights asserted by Passenheim were clearly established, the crucial question is whether Passenheim's rights were in fact violated by defendants. In arguing that Passenheim's rights were not violated, defendants for the most part rely on their version of contested facts. Defendants barely acknowledge that, for purposes of ruling on their summary-judgment motion, the Court must assume that *Passenheim's* version of contested facts is true. *See Anderson*, 477 U.S. at 255. With the correct standard in mind, the Court will briefly review the claims against each defendant.

1. Tolbert

There are multiple factual disputes that make it impossible for the Court to find, as a matter of law, that Tolbert did not violate a clearly established constitutional right of Passenheim.

To begin with, if Passenheim's version of events is true, Tolbert did not have the reasonable suspicion that he needed to lawfully pull over Passenheim's vehicle.

"Under the Fourth Amendment, officers may 'conduct a brief investigative stop when they have reasonable, articulable suspicion that a person is committing or is about to commit a crime.'" *United States v. Trogdon*, 789 F.3d 907, 910 (8th Cir. 2015) (quoting *United States v. Horton*, 611 F.3d 936, 940 (8th Cir. 2010)).  It is far from clear whether Tolbert actually suspected that Passenheim was committing or was about to commit a crime—but, even if Tolbert had such a suspicion, the suspicion was not reasonable.

Tolbert claims that Passenheim broke a traffic law by improperly crossing a line on the road, ECF No. 22-1 [Tolbert Dep.] at 27:6-8, 32:18-33:7, but Passenheim denies that he did so, Passenheim Dep. 46:15-23, 47:19-24, and the Court must accept Passenheim's version as true.  (The Court notes that no such violation is apparent on the dash-cam video.)  Tolbert also asserts that Passenheim did not immediately pull over after Tolbert activated his squad car's lights.  Tolbert Dep. 26:17-21.  That seems to be true (based on the dash-cam video), but Passenheim claims that Tolbert did not have the right to *initiate* a traffic stop.  The fact that Passenheim did not immediately pull over after Tolbert initiated an unconstitutional traffic stop does not retroactively make that traffic stop constitutional.

Finally, Tolbert argues that it was lawful for him to pull over Tolbert because (1) his department's "stats and mapping" predicted that the Walgreens store where Tolbert initially observed Passenheim was particularly vulnerable to crime and

(2) Tolbert saw Passenheim run from the Walgreens store to his van. Tolbert Dep. 21:13-23:6. But those two facts clearly do not amount to a "reasonable, articulable suspicion that [Passenheim was] committing or [was] about to commit a crime." *Trogdon*, 789 F.3d at 910 (quoting *Horton*, 611 F.3d at 940)). If they did, then Tolbert could have constitutionally initiated a traffic stop on each and every person seen hurrying to his or her car from the Walgreens store on that chilly morning. In short, a reasonable jury could find that Tolbert acted unconstitutionally when he initiated a traffic stop without reasonable, articulable suspicion that Tolbert was committing or was about to commit a crime.

A reasonable jury could also find that Tolbert was not justified in frisking Passenheim immediately after the traffic stop. Even after a suspect has been lawfully stopped, officers may perform a pat-down search for weapons only when officers have a "reasonable, articulable suspicion that the suspect is armed and dangerous." *Id*. Considering all of the events leading up to the frisk—including Tolbert's general observation that Passenheim was "very nervous" and Tolbert's discovery that Passenheim had a prior "weapons charge," Tolbert Dep. 46:5-14, 62:12-14—the record does not establish as a matter of law that there was sufficient reason to suspect that Passenheim was, at that moment, "armed and dangerous," *Trogdon*, 789 F.3d at 910.

That leaves the subsequent searches—the searches that, according to Passenheim, involved the repeated, unnecessarily rough prodding and grabbing of the area around his anus. Defendants argue that, even if the traffic stop and initial pat-down search were unlawful, the subsequent searches may still be valid. They contend that, in § 1983 lawsuits, an initial constitutional violation does not taint subsequent police actions.

It is true that the "fruit of the poisonous tree" doctrine does not apply in civil cases. *E.g.*, *Townes v. City of New York*, 176 F.3d 138, 145-46 (2d Cir. 1999). Thus, for example, a § 1983 plaintiff may not rely on an unconstitutional search or seizure to recover damages for being incarcerated after fruits of the unlawful search or seizure are used as evidence to secure his conviction. *See id.* at 146-47.

That said, defendants are nevertheless liable for injuries proximately caused by their constitutional torts. *Id.* at 146; *see also, e.g.*, *Naucke v. City of Park Hills*, 284 F.3d 923, 928 (8th Cir. 2002) (applying proximate-cause analysis to § 1983 claim); *Audio Odyssey, Ltd. v. Brenton First Nat'l Bank*, 245 F.3d 721, 739 (8th Cir. 2001) (same), *panel opinion reinstated*, 286 F.3d 498 (2002) (en banc). A defendant's wrongdoing need only be a substantial factor in producing the plaintiff's injuries to qualify as a proximate cause; it need not be the sole cause. *See Naucke*, 284 F.3d at 928.

Here, even if Tolbert did not use excessive force in searching Passenheim, Tolbert may nevertheless be held liable for the injuries that Passenheim suffered if the jury finds

that those injuries were proximately caused by the unlawful traffic stop or the unlawful pat-down search. The Eighth Circuit recognizes that proximate causation is generally a question for the jury, and § 1983 cases are no exception. *See, e.g.*, *Audio Odyssey*, 245 F.3d at 739. Precisely which of defendants' later actions were proximately caused by Tolbert's unlawful stop and unlawful frisk is a fact-intensive question that must be resolved by the jury.

Moreover, it must be recalled that Passenheim alleges that Tolbert *did* use excessive force during the subsequent searches. Tolbert says that the force he used while searching Passenheim was justified because he felt a foreign object in or near Passenheim's anus. Tolbert Dep. 44:23-45:6, 46:17-21. But Passenheim says that Tolbert cannot be telling the truth because there was nothing in or near his anus that any officer could have mistaken for a foreign object. Passenheim Dep. 72:17-23. Further supporting Passenheim's version of events is the fact that the officers ultimately let him drive away from the scene, even though he did not have a valid license. Passenheim asks a good question: If Tolbert or any other officer truly believed that Passenheim was concealing drugs or other contraband in or near his anus, would they not at least have taken him to the station for a more thorough search? Why would they allow him to drive away from the scene *illegally*? Passenheim is correct that the inexplicable conduct

of the officers supports an inference that the officers knew they had done something wrong and were attempting to placate Passenheim.

For these reasons, the Court denies Tolbert's motion for summary judgment on Passenheim's § 1983 claim against him.

### 2. Other Defendants

Whatever Tolbert's transgressions, the other defendants are liable under § 1983 only for their own actions. *See Smith v. City of Minneapolis*, 754 F.3d 541, 547 (8th Cir. 2014). "'Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed.' Section 1983 does not sanction tort by association." *Id.* (quoting *Heartland Acad. Cmty. Church v. Waddle*, 595 F.3d 798, 805-06 (8th Cir. 2010)).

As for Buck: Buck, like Tolbert, is accused of using excessive force in searching Passenheim. Buck, like Tolbert, says that the force he used while searching Passenheim was justified because Buck felt a foreign object in Passenheim's anus. ECF No. 22-3 [Buck Dep.] at 42:24-43:5. Again, though, Passenheim says that Buck cannot be telling the truth because there was nothing in or near his anus that any officer could have mistaken for a foreign object. Passenheim Dep. 72:17-23. And Passenheim again points to the curious decision of the officers to let him drive away from the scene, even though

he did not have a valid driver's license.  Buck's motion for summary judgment is denied.

As for Farrand:  As a general matter, "[a]n officer may be held liable only for his or her own use of excessive force."  *Smith*, 754 F.3d at 547-48 (quoting *Smith v. Kan. City, Mo. Police Dep't*, 586 F.3d 576, 581 (8th Cir. 2009)).  But liability may nevertheless attach where an officer fails "to intervene to prevent the excessive use of force—where the officer is aware of the abuse and the duration of the episode is sufficient to permit an inference of tacit collaboration."  *Krout v. Goemmer*, 583 F.3d 557, 565 (8th Cir. 2009).  Still, the officer must be "aware of the abuse," *id.*, and Passenheim has not cited any evidence that Farrand knew that the searches that Tolbert and Buck were conducting were causing pain to Passenheim,[2] nor has Passenheim cited any evidence that Farrand knew that the searches were not justified because there was nothing in or near Passenheim's anus that would have led officers to believe that he was hiding contraband.  Moreover, Passenheim has no cited no evidence that Farrand knew of (much less condoned) the questionable basis of the traffic stop or the questionable basis of the pat-down search.  To the contrary, Farrand testified without contradiction that Tolbert did not tell him why he stopped and searched Passenheim.  ECF No. 22-2

---

[2]Passenheim did complain to Tolbert and Buck that the handcuffs he was wearing were hurting his wrists, Tolbert Dep. 88:6-89:11; Buck Dep. 63:4-64:9, but Passenheim has not brought a § 1983 claim in connection with the handcuffing.

[Farrand Dep.] at 29:23-30:10, 34:6-16, 43:19-45:23, 66:9-20.  For these reasons, the Court grants summary judgment to Farrand on the § 1983 claim.

Finally, Passenheim fails to cite evidence that would permit a jury to return a verdict in his favor on his *Monell*[3] claim against Brooklyn Park.  Passenheim asserts that the Brooklyn Park Police Department (1) had "a custom and practice" of not writing reports on traffic stops if the driver was not ultimately charged with any crime and (2) had a policy that strip searches should occur when a suspect is armed.  ECF No. 24 at 35-36.  But neither of these alleged policies "directed [the officers] to act unconstitutionally or otherwise *caused* a deprivation of [Passenheim]'s rights," as would be necessary to impose liability on the city.  *Shultz v. Buchanan*, 829 F.3d 943, 951 (8th Cir. 2016) (citing *Szabla v. City of Brooklyn Park*, 486 F.3d 385, 390 (8th Cir. 2007) (en banc)).  First, the practice of not writing reports after the fact has nothing to do with whether defendants were justified in stopping and searching Passenheim in the first place.  Second, the strip-search policy did not cause the police to strip search Passenheim.  Therefore, Brooklyn Park is entitled to summary judgment on Passenheim's § 1983 claim.[4]

---

[3]*See generally Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

[4]Because the Court has not dismissed Passenheim's § 1983 claims against Tolbert and Buck, Passenheim's claim for punitive damages is not moot.  Whether Tolbert and Buck were "motivated by evil motive or intent" or acted with "callous indifference to the federally protected rights of others" and thus may be required to pay punitive

*B. State-Law Claims*

Passenheim asserts state-law claims against Tolbert, Buck, and Farrand, including claims of assault, battery, false arrest, illegal imprisonment, and intentional infliction of emotional distress. ECF No. 1 at ¶¶ 23-31. Defendants did not dispute at oral argument that the analysis of Passenheim's state claims largely tracks the analysis of his federal claims. *See Adewale v. Whalen*, 21 F. Supp. 2d 1006, 1016 (D. Minn. 1998) (under Minnesota law, assault and battery requires "excessive" force; false imprisonment is "made without proper legal authority"; and intentional infliction of emotional distress involves "extreme and outrageous" conduct that "was intentional and reckless"). For the reasons described above, then, the Court will not dismiss the state-law claims against Tolbert and Buck, but will dismiss the state-law claims against Farrand.

Tolbert and Buck insist that, even if they committed a tort, they are nevertheless entitled to official immunity under Minnesota law. "Under Minnesota law, official immunity protects police officers engaged in law enforcement efforts unless they act with subjective malice." *Wertish v. Krueger*, 433 F.3d 1062, 1067 (8th Cir. 2006). The term "subjective malice" is somewhat misleading. An official has acted with "subjective malice" when "the official has intentionally committed an act that he or she had reason

---

damages depends on disputed facts that the jury will have to decide. *Smith v. Wade*, 461 U.S. 30, 56 (1983).

to believe is prohibited." *State by Beaulieu v. City of Mounds View*, 518 N.W.2d 567, 571 (Minn. 1994). This "contemplates less of a subjective inquiry into malice, which was traditionally favored at common law, and more of an objective inquiry into the legal reasonableness of an official's actions." *Id.*; *see also Smith v. City of Brooklyn Park*, 757 F.3d 765, 775 (8th Cir. 2014) (quoting *Beaulieu*); *Smith v. City of Minneapolis*, 754 F.3d 541, 549 (8th Cir. 2014) (same); *Loch v. City of Litchfield*, 689 F.3d 961, 968 (8th Cir. 2012) (same).

Under the circumstances of this case, official-immunity analysis under Minnesota state law does not appear to differ in any material respect from qualified-immunity analysis under federal law. Thus, for the same reasons why the Court cannot find as a matter of law that Tolbert and Buck are immune under federal law, the Court cannot find as a matter of law that Tolbert and Buck are immune under state law.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT defendants' motion for summary judgment [ECF No. 15] is GRANTED IN PART AND DENIED IN PART as follows:

1. The motion is GRANTED as to defendants Max Farrand, Craig Enevoldsen, and City of Brooklyn Park. All claims against Farrand,

Enevoldsen, and Brooklyn Park are DISMISSED WITH PREJUDICE AND ON THE MERITS.

2. The motion is DENIED as to defendants Andrew Tolbert and Jason Buck.

Date:  November 21, 2016                                s/Patrick J. Schiltz
                                                        Patrick J. Schiltz
                                                        United States District Judge